UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MINGHANG CHEN,

Petitioner,

v.

MARKWAYNE MULLIN, Secretary, Department of Homeland Security, *et al.*,

Respondents.

**MEMORANDUM & ORDER**
26-CV-5498 (HG)

**HECTOR GONZALEZ**, United States District Judge:

On August 13, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner Minghang Chen at LaGuardia Airport. Petitioner was ultimately transferred to the Metropolitan Detention Center in Brooklyn, where he remains detained. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Petition").[1] For the reasons that follow, his Petition is GRANTED.

## BACKGROUND[2]

Petitioner is a citizen of the People's Republic of China who initially entered the United States with his mother on a B-2 non-immigrant visa, with authorization to remain in the United States for a temporary period not to extend past November 11, 2015. *See* ECF No. 1 ¶¶ 10–15; ECF No. 7 at 3. After arriving in the United States, Petitioner's mother timely filed an application for asylum. *See* ECF No. 1¶¶ 10–15, 20 . Because Petitioner was a minor when his

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2] The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

mother submitted her asylum application, she listed Petitioner as a derivative applicant. *Id.* ¶ 13. Ultimately, Petitioner remained in the United States beyond the period authorized by his visa. Approximately ten years later, Petitioner submitted his own application for asylum. ECF No. 7 at 3; ECF No. 1 ¶ 21.

In mid-August of this year, the Transportation Security Administration informed ICE that Petitioner was scheduled to fly from New York City to Florida the next day. ECF No. 7 at 3. In light of that information, ICE "ran database checks on Petitioner and confirmed that he had overstayed his B-2 non-immigrant visa and was therefore illegally present in the United States." *Id.* ICE issued a Form I-200, Warrant for Arrest of Alien, on that basis. *Id.* On August 13, 2026, ICE arrested Petitioner at LaGuardia Airport and detained him pursuant to 8 U.S.C. § 1226(a). *Id.* at 3, 8.

Petitioner was then transported to the New York City ICE Hold Room at 26 Federal Plaza for post-arrest processing. *Id.* There, ICE served him with a Form I-862, Notice to Appear, and interviewed him in connection with the statutory requirements of Section 1226(a). *See* ECF No. 7 at 3–4; 8 C.F.R.§ 236.1(c)(8), (d)(1). Based on the information provided during that interview, ICE determined that "Petitioner failed to establish that he does not pose a flight risk" because of "his lack of local ties to New York, lack of fixed address or employment, and lack of status after overstaying his visa which expired over 10 years ago." *See* ECF No. 7 at 9 (citing ECF No. 7-2 ¶ 10 (Declaration of Deportation Officer Somai)).

Approximately a week after Petitioner was arrested and ICE conducted its initial custody determination, Petitioner received a bond hearing before an Immigration Judge ("IJ"). ECF No. 7 at 4. After "a thorough hearing on the merits," the IJ found Petitioner was a "flight risk" and denied bond. *Id.* at 5.

A few weeks later, on September 4, 2026, Petitioner, through counsel, initiated the instant action by filing a petition for a writ of habeas corpus. *See generally* ECF No. 1. Among other things, Petitioner states that: (1) his detention violates the Due Process Clause of the Fifth Amendment; (2) his detention violates the Immigration Nationality Act ("INA"); (3) his detention violates the Supreme Court's prohibition against "indefinite detention," as set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (4) the government lacks authority to remove him while his mother's asylum application is pending. *See id.* ¶¶ 24–43.

That same day, the Court issued an Order to Show Cause directing the government to show cause "why the petition should not be granted, and why Respondents should not be ordered to immediately release Petitioner from detention, in light of the Second Circuit's holding in *Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026)," and directing the government to "address whether Petitioner is being detained pursuant to 8 U.S.C. § 1225 or § 1226." *See* Sept. 4, 2026, Text Order.

The government filed its response on September 15, 2026, in which it states, among other things, that ICE detained Petitioner pursuant to 8 U.S.C. § 1226(a), conducted the individualized custody determination required by Section 1226(a), found that "Petitioner failed to establish that he does not pose a flight risk," and that "once ICE makes the individualized custody determination, 8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing that determination." ECF No. 7 ("Response") at 3–4, 7, 9. Six days later, Petitioner filed his reply . *See* ECF No. 8 ("Reply"). There, Petitioner argues that ICE's initial custody determination was inadequate because it "was conducted neither prior to nor concurrently with his arrest" and because the government's findings "are fundamentally flawed due to basic factual oversights." *Id.* at 2–3.

## LEGAL STANDARD

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Particularly relevant here is the Second Circuit's recent decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). There, the Circuit held that Section 1226(a), not Section 1225(b)(2)(A), applies to noncitizens like Petitioner who were already present in the United States for several years when they were apprehended. 175 F.4th at 96. Statutory bases for detention notwithstanding, the Petition requires the Court to determine whether the government's detention of Petitioner violates his due process rights. Accordingly, the Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying *Mathews* to civil immigration confinement). Under that test, the Court must balance: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

## DISCUSSION

At bottom, Petitioner argues that his detention violates due process because the government detained him "without individualized justification demonstrating that he poses a danger or an actual flight risk." *See* ECF No. 1 ¶¶ 24–28. But the record demonstrates—and Petitioner concedes in his Reply—that, in fact, ICE conducted the requisite individualized custody determination. *See* ECF No. 7 at 3–4; ECF No. 8 at 3. Thus, practically, Petitioner's argument is not that he did not receive "individualized justification," it's that, in his view, the individualized custody determination was constitutionally inadequate. *See* ECF No. 8 at 2–4. This argument necessarily raises the operative question: did the government comport with due process in conducting Petitioner's individualized custody determination? The government argues it did because it conducted a timely individualized custody determination; determined that "Petitioner failed to establish that he does not pose a flight risk" because of "his lack of local ties to New York, lack of fixed address or employment, and lack of status after overstaying his visa which expired over 10 years ago"; and Petitioner requested and received "more process" *vis-à-vis* his custody redetermination hearing before the IJ. *See* ECF No. 7 at 4–5. However, as set forth in further detail below, the Court agrees with Petitioner that his initial custody determination was constitutionally deficient and, therefore, concludes that his detention violates his due process rights.[3]

---

[3] The Court need not address Petitioner's other claims, given its conclusion that Petitioner's initial custody determination under 8 U.S.C. § 1226(a) was procedurally deficient, in violation of the Due Process Clause of the Fifth Amendment.

A significant part of the government's argument in its Response is that "[o]nce ICE makes the individualized custody determination, 8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing that determination." ECF No. 7 at 2, 4–5, 9. That is correct, generally, but it depends on the nature of the Court's inquiry and, here, ICE's discretionary judgment is not the focus. *See Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026). "Rather than impermissibly pry behind the discretionary curtain, the Court assesses whether and how correct procedures were applied at all . . . and ultimately, whether [Petitioner]'s detention comports with due process." *Pastrana-Beltran*, 2026 WL 1398609, at *3 (citing *Zadvydas*, 533 U.S. at 687). Here, the Court's assessment of *how* ICE applied the procedures of Section 1226(a) leads it to the inescapable conclusion that, with respect to Petitioner's initial custody determination, the relevant procedures were, at the very least, "applied erroneously." *Id.*

Recall the government's proffered reasons for determining Petitioner is a flight risk: (1) "his lack of local ties to New York"; (2) his "lack of fixed address or employment"; and (3) his "lack of status after overstaying his visa which expired over 10 years ago." ECF No. 7 at 9; ECF No. 7-2 at 12 (INA § 236(a) Initial Custody Determination Form, dated August 13, 2026). Exhibit F to the government's Response). The government's purported "reasons" are flawed such that they cannot properly undergird ICE's determination under Section 1226(a).

The first "reason"—that Petitioner lacks "local ties to New York"—is precisely the sort of "catch-22" that creates the "heads-I-win-tails-you-lose scenario" that this Court, on multiple occasions, has found violates due process. *See Curimilma Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026); *Cajamarca-Janza v. Soto*, No. 26-cv-3066, 2026 WL 1506777, at *4 (E.D.N.Y. May 29, 2026). At the outset, "the Transportation Security

Administration informed ICE that Petitioner was scheduled to fly from New York to Florida," which, at the very least, suggests that he was *visiting* New York. *See* ECF No. 7 at 3. That suggestion was corroborated almost immediately because ICE's own processing paperwork states that Petitioner "identified himself . . . and provided a Florida Driver's license" before he was arrested. ECF No. 7-2 at 6 (Form I-213, dated August 13, 2026). It would have been further corroborated when, in connection with post-arrest processing that same day, ICE indicated that Petitioner's "U.S. Address" and "U.S. Employer" are both in Florida. *See id.* at 5, 6. And again when ICE placed Petitioner's Florida driver license in his file. *See id.* at 8. Of course Petitioner lacks local ties to New York—he is not local to New York—he is local to Florida, where he resides. That was readily apparent to ICE before, during, and after Petitioner's arrest. Whether the government intentionally shut its eyes and plugged its ears to facts that do not support its desired outcome or inadvertently missed those facts, the government's internal contradictions amount to "a no-win situation for noncitizens writ large." *Cajamarca-Janza*, 2026 WL 1506777, at *4. Not only is this sort of no-win situation insufficiently individualized for the purposes of Section 1226(a), but it also effectively forecloses Petitioner from a meaningful opportunity to "demonstrate to the satisfaction of the officer" that he was not a flight risk. *See Gopie v. Lyons*, No. 25-cv-05229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025); *Quille*, 2026 WL 1453889, at *4–5; *Cajamarca-Janza*, 2026 WL 1506777, at *5. Accordingly, it violates due process.

Much the same can be said for the government's second "reason": that Petitioner lacks a "fixed address or employment." This assertion is contradicted, several times over, by the government's own submission, which identifies Petitioner's Florida address, the name and address of his employer in Florida, and makes multiple references to his Florida driver license,

which lists an address consistent with the "U.S. Address" the government lists on the first page of the Form I-213. *See* ECF No. 7-2 at 5–9. The government's error is significant because like the government's first "reason," it precludes Petitioner from the opportunity to demonstrate to the officer, but especially so here because it demonstrates both a "high risk of the erroneous deprivation of Petitioner's liberty interest," and that "the actual erroneous deprivation of that interest" has already occurred. *Quille*, 2026 WL 1453889, at *5.

The government's third reason—that Petitioner lacks "status after overstaying his visa"—is no different than the determinations that the court rejected in *Pastrana-Beltran*, and this Court rejected in *Quille*, and *Cajamarca-Janza*. In each of those cases, the court found that:

> The problem is that a per se determination of this sort—on his status alone, rather than any assessment of the factors listed on the form—comports not with 1226(a), but with Respondents' desired policy of mandatory detention under 1225(b)(2)(A) for any noncitizens who entered the U.S. without inspection however long ago. . . . [This] threatens a ping pong approach to Petitioner's liberty that is constitutionally untenable.

*Pastrana-Beltran*, 2026 WL 1398609, at *2 (citing *Inestroza Carbajal v. Frazier*, No. 26-cv-2778, 2026 WL 1309265 at *4 (E.D.N.Y. May 12, 2026)); *Quille*, 2026 WL 1453889, at *4; *Cajamarca-Janza*, 2026 WL 1506777, at *5. Accordingly, the result is the same. The government's attempt to use the fact of Petitioner's status as a tool to justify his detention is incompatible with Section 1226(a)'s requirements.

Given the foregoing, it should come as no surprise that after assessing "whether and how correct procedures were applied . . . and ultimately, whether [Petitioner]'s detention comports with due process," *Pastrana-Beltran*, 2026 WL 1398609, at *3, the Court concludes that the government's initial custody determination was inadequate, it failed to comply with Section 1226(a)'s statutory mandate, and Petitioner's detention is invalid. Because the "typical remedy" for "unlawful executive detention" is "of course, release," *Munaf v. Geren*, 553 U.S.

674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973), the government's continued detention of Petitioner entitles him to immediate release, *see, e.g.*, *Pastrana-Beltran*, 2026 WL 1398609, at *2–3 (granting habeas relief and ordering petitioner's release because the government "did not apply the test 1226(a) requires, and which the [initial custody determination] form itself instructs"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (granting habeas relief and ordering petitioner's release "given the nature of the constitutional violation [he] sustained" by the government's failure to properly conduct an "individualized assessment before detaining him"); *Quille*, 2026 WL 1453889, at *4 (granting habeas relief and ordering petitioner's release given the status-based per se determination, "sweeping generalizations," and "blatant error" in government rationale for discretionary detention).

## CONCLUSION

For these reasons, the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is GRANTED.

The government is directed to immediately release Petitioner from custody and is further directed to certify compliance with this Order by filing a letter on the docket no later than noon tomorrow, October 2, 2026. The Court further orders that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing by clear and convincing evidence that his detention is authorized under Section 1226(a). *See J.C.G. v. Genalo*, No. 24-cv-08755, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases where courts

ordered that the government bear the burden of demonstrating by clear and convincing evidence that discretionary detention was justified).

This Order includes "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements" and return petitioner to "the status quo ante").

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
October 1, 2026